QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Steig D. Olson (*pro hac vice forthcoming*)
  Marlo A. Pecora (*pro hac vice forthcoming*)
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone:  (212) 849-7000
Facsimile:  (212) 849-7100
steigolsen@quinnemanuel.com
marlopecora@quinnemanuel.com

  Stephen A. Broome (SBN 314605)
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100
stephenbroome@quinnemanuel.com

  Sam S. Stake (SBN 257916)
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone:  (415) 875-6600
Facsimile:  (415) 875-6700
samstake@quinnemanuel.com

  Stephen A. Swedlow (*pro hac vice forthcoming*)
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone:  (312) 705-7400
Facsimile:  (650) 801-5100
stephenswedlow@quinnemanuel.com

Attorneys for Defendants IQVIA Inc.
and IMS Software Services, Ltd.

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| VEEVA SYSTEMS INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>IQVIA INC. and IMS SOFTWARE SERVICES, LTD.,<br><br>    Defendants. | CASE NO. 3:19-CV-04137-WHA<br><br>**DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS, STAY, OR TRANSFER**<br><br>Hearing Date:   September 19, 2019<br>Hearing Time:  8:00 a.m. |

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** at 8:00 a.m. on September 19, 2019 in Courtroom 12 – 19th Floor of the United States District Court, Northern District of California, Defendants IQVIA Inc. and IMS Software Services, Ltd. (collectively, "Defendants" or "IQVIA") will and hereby do move this Court for an order, pursuant to the first-to-file rule, dismissing, staying, or transferring this action in favor of substantially similar actions pending in the District of New Jersey, or in the alternative transferring this action to the District of New Jersey pursuant to 28 U.S.C. § 1404(a).

This Motion is made pursuant to the first-to-file rule of federal comity. *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982); *Alltrade, Inc. v. Uniweld Prod., Inc.*, 946 F.2d 622, 623 (9th Cir. 1991). Where an action is commenced and there is already another case (here, two other cases) pending presenting similar issues between the same parties, principles of federal comity compel dismissal, stay, or transfer. Dismissal, stay, or transfer is appropriate because the earlier-filed New Jersey actions involve the same parties and involve issues that substantially overlap with the subject matter of the instant action. Dismissal, stay, or transfer of this action would also serve the interests of judicial economy.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities in Support of the Motion; the Declaration of Stephen A. Broome; all other papers, documents or exhibits that may be filed in support of this Motion; and the arguments of counsel, if any, made before the Court at the hearing.

Dated: August 15, 2019                     QUINN EMANUEL URQUHART & SULLIVAN, LLP

                                                    By:        /s/ *Stephen A. Broome*
                                                               Steig D. Olson
                                                               Marlo A. Pecora
                                                               Stephen A. Broome
                                                               Sam S. Stake
                                                               Stephen A. Swedlow

                                                               *Attorneys for Defendants IQVIA Inc. and IMS Software Services, Ltd.*

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................1

I.  INTRODUCTION............................................................................................1

II. STATEMENT OF FACTS AND PROCEDURAL HISTORY ...........................2

    A.  The Claims and Counterclaims in *New Jersey I*.................................2

    B.  Proceedings in the District Court of New Jersey To Date .........................3

    C.  Veeva's Proposed New Counterclaims And IQVIA's Response...............4

III. ARGUMENT .................................................................................................7

    A.  Under the First-to-File Rule, This Action Should be Dismissed, Stayed, or Transferred to the District of New Jersey ......................................7

        1.  The New Jersey Actions Were Filed Before the Instant Action ...................9

        2.  The Parties Are the Same in This Action and the New Jersey Actions ..................................................................................9

        3.  The Issues in This Action Are Substantially Similar to Those Presented in the New Jersey Actions ........................................10

        4.  *New Jersey II* is Not An Anticipatory Suit....................................12

        5.  The Equities Weigh In Favor of Dismissal, Stay, or Transfer ...................14

    B.  Transfer is Also Appropriate Pursuant to 28 U.S.C. § 1404(a) ..............17

IV. CONCLUSION ..............................................................................................19

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS, STAY, OR TRANSFER

# TABLE OF AUTHORITIES

**Page**

## Cases

*A. J. Indus., Inc. v. U.S. Dist. Court for Cent. Dist. of Cal.*,
   503 F.2d 384, 389 (9th Cir. 1974)...................................................................... 15

*Allstar Mktg. Grp., LLC v. Your Store Online, LLC*,
   666 F. Supp. 2d 1109 (C.D. Cal. 2009) ............................................................. 18

*Alltrade, Inc. v. Uniweld Prods., Inc.*,
   946 F.2d 622 (9th Cir. 1991)........................................................................... 1, 7

*Barnes & Noble, Inc. v. LSI Corp.*,
   823 F. Supp. 2d 980 (N.D. Cal. 2011) .............................................................. 13

*Ben Chang v. Biosuccess Biotech, Co.*,
   2014 WL 12703706 (N.D. Cal. May 30, 2014) ................................................. 15

*Beverly Jewerlly Co., Ltd. v. Tacori Enterprises*,
   2006 WL 3304218 (N.D. Ohio 2006) .................................................................. 9

*BizCloud, Inc. v. Computer Scis. Corp.*,
   2014 WL 1724762 (N.D. Cal. Apr. 29, 2014) ................................................... 12

*Cadenasso v. Metro. Life Ins. Co.*,
   2014 WL 1510853 (N.D. Cal. Apr. 15, 2014) ................................................... 18

*Cardoza v. T-Mobile USA Inc.*,
   2009 WL 723843 (N.D. Cal. Mar. 18, 2009) ..................................................... 19

*Church of Scientology of Cal. v. U.S. Dep't of Army*,
   611 F.2d 738 (9th Cir. 1979).............................................................................. 7

*Doubletree Partners, L.P. v. Land Am. Am. Title Co.*,
   2008 WL 5119599 (N.D. Tex. Dec. 3, 2008)..................................................... 13

*Glob. Music Rights, LLC v. Radio Music License Comm., Inc.*,
   2017 WL 3449606 (C.D. Cal. Apr. 7, 2017) ..................................................... 14

*Gustavson v. Mars, Inc.*,
   2014 WL 6986421 (N.D. Cal. Dec. 10, 2014) .................................................... 8

*Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc.*,
   179 F.R.D. 264 (C.D. Cal. 1998) ....................................................................... 7

*Holmes Grp., Inc. v. Hamilton Beach/Proctor Silex, Inc.*,
   249 F. Supp. 2d 12 (D. Mass. 2002) ................................................................. 13

*Inherent.com v. Martindale-Hubbell*,
   420 F. Supp. 2d 1093 (N.D. Cal. 2006) ........................................................ 8, 17

*Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*,
   544 F. Supp. 2d 949 (N.D. Cal. 2008) ............................................... 7, 8, 9, 13

*Intuitive Surgical, Inc. v. Cal. Inst. of Tech.*,
   2007 WL 1150787 (N.D. Cal. Apr. 18, 2007) ...................................... 9, 14

*Jones v. GNC Franchising, Inc.*,
   211 F.3d 495 (9th Cir. 2000) ...................................................................... 18

*K.H.B. by & through K.D.B. v. UnitedHealthcare Ins. Co.*,
   2018 WL 4913666 (N.D. Cal. Oct. 10, 2018) ............................................. 17

*King-Scott v. Univ. Med. Pharm., Corp.*,
   2010 WL 1815431 (S.D. Cal. May 6, 2010) ........................................ 17, 18

*Kohn Law Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*,
   787 F.3d 1237 (9th Cir. 2015) ................................................................. 7, 9

*Minor v. Sotheby's Inc.*,
   2009 WL 55589 (N.D. Cal. Jan. 7, 2009) ..................................................... 8

*Nature's Way Prod., Inc. v. Zila Nutraceuticals, Inc.*,
   2006 WL 2883205 (D. Utah Oct. 5, 2006) ................................................... 9

*Pacesetter Systems, Inc. v. Medtronic, Inc.*,
   678 F.2d 93 (9th Cir. 1982) ......................................................................... 1

*Power Integrations, Inc. v. ON Semiconductor Corp.*,
   2017 WL 1065334 (N.D. Cal. Mar. 21, 2017) ........................................... 14

*Quintiles IMS Inc. v. Veeva Sys., Inc.*,
   2017 WL 2766166 (D. N.J. June 23, 2017) .......................................... 3, 16

*Quintiles IMS Inc. v. Veeva Sys., Inc.*,
   2017 WL 4842377 (D. N.J. Oct. 26, 2017) ................................................. 4

*Sony Computer Entm't Am. Inc. v. Am. Med. Response, Inc.*,
   2007 WL 781969 (N.D. Cal. Mar. 13, 2007) ............................................. 13

*Tria Beauty, Inc. v. Oregon Aesthetic Techs., Inc.*,
   2011 WL 13253662 (N.D. Cal. Mar. 10, 2011) .................... 7, 8, 10, 12, 13, 14, 17

*Vado v. Champion Petfoods USA, Inc.*,
   2019 WL 634644 (N.D. Cal. Feb. 14, 2019) ................................................ 8

*W. Pac. Signal, LLC v. Trafficware Grp., Inc.*,
   2018 WL 3109809 (N.D. Cal. June 25, 2018) ........................................... 13

*Wallerstein v. Dole Fresh Vegetables, Inc.*,
   967 F. Supp. 2d 1289 (N.D. Cal. 2013) ....................................................... 7

*Wells v. Cingular Wireless LLC*,
   2006 WL 2792432 (N.D. Cal. Sept. 27, 2006) .......................................... 17

*Wiley v. Gerber Prod. Co.*,
   667 F. Supp. 2d 171 (D. Mass. 2009) ....................................................... 16

CASE NO. 3:19-CV-04137-WHA

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS, STAY, OR TRANSFER

*Zurich Am. Ins. Co. v. DS Waters of Am., Inc.*,
    2013 WL 12128686 (C.D. Cal. Mar. 18, 2013) ........................................................ 15

## **Statutory Authorities**

15 U.S.C. § 22 ................................................................................................................ 18

28 U.S.C. § 1404 .................................................................................................. 3, 17, 18

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    <u>INTRODUCTION</u>

Defendants IQVIA Inc. and IMS Software Services, Ltd. (collectively, "Defendants" or "IQVIA") move to dismiss, stay, or transfer this duplicative lawsuit in light of earlier-filed actions pending in the District of New Jersey between the same parties that present substantially similar issues.  The first-to-file doctrine exists precisely to prevent the type of inefficient, duplicative filing that Veeva has made here.

Since January 2017, IQVIA and Veeva have been litigating a substantially similar case in the District of New Jersey:  *IQVIA Inc. v. Veeva Sys. Inc.*, No. 17-cv-177 (D. N.J.) ("*New Jersey I*").  In *New Jersey I*, IQVIA asserted claims against Veeva for, among other things, theft of IQVIA's trade secrets.  Ex. A (*New Jersey I* Compl.) at ¶ 1.[1]  In response, Veeva asserted a number of antitrust and other counterclaims that turn on numerous legal and factual issues that are virtually identical to those raised by Veeva's antitrust claims here.  In both *New Jersey I* and this case, Veeva asserts that IQVIA violates the antitrust laws because IQVIA does not want to hand over proprietary, protected information to Veeva—a direct competitor.  IQVIA violates the antitrust laws, on this theory, by refusing to grant Third Party Access ("TPA") agreements allowing the parties' mutual customers to use IQVIA Sales Data and/or Reference Data in Veeva's technology offerings, which allegedly makes Veeva's technology offerings less attractive.  While this claim is baseless and the antitrust laws impose no obligation on IQVIA to turn over its trade secrets to a competitor, much less one with a demonstrated history of trade-secret theft, Veeva has already spent over *two years* in *New Jersey I* conducting extensive (albeit fruitless) discovery of the IQVIA TPA program that is at the heart of its claims in both that action and this one.

IQVIA also filed a second case, *IQVIA Inc. v. Veeva Sys. Inc.*, No. 19-cv-15517 (D. N.J.) ("*New Jersey II*"), prior to the instant action.  *New Jersey II* relates to a new Veeva technology

---

[1]  On November 6, 2017 the entity Quintiles IMS Incorporated changed its name to IQVIA Inc.  The case caption was amended to reflect this name change on December 20, 2017.  *See* Ex. B (Dec. 20, 2017 Order directing Clerk of Court to change case caption, Dkt. Entry No. 105 in 17-cv-177 (D. N.J.)).  All exhibit letters refer to exhibits attached to the Declaration of Stephen A. Broome, filed concurrently herewith.

offering launched after *New Jersey I* was filed—an offering called Veeva Nitro—but raises a number of identical legal and factual issues as *New Jersey I*. In *New Jersey II*, IQVIA asks the Court to declare that, as a matter of law, IQVIA is not liable under antitrust or any other laws for refusing to sign TPA agreements allowing Veeva to ingest IQVIA data into Veeva's technology offerings. Thus, *New Jersey II*, even more than *New Jersey I*, has complete overlap with the instant action. If granted, the declaration that IQVIA has requested would resolve most of the claims that Veeva has asserted in all three actions.

For reasons of efficiency, judicial economy, and to avoid the material risk of inconsistent outcomes, the parties' recent dispute about Veeva Nitro should be heard by the same Court that has been adjudicating the same parties' substantially similar dispute regarding the same alleged refusal by IQVIA to turn over its trade-secret protected information to Veeva, a competitor, for over two and a half years.

Moreover, because IQVIA filed both *New Jersey I* and *New Jersey II* before Veeva filed this case, the well established first-to-file rule compels dismissal, a stay, or transfer. Doing so will prevent unnecessary expenditure of judicial and party resources, eliminate the risk of inconsistent rulings, and promote the efficient adjudication of issues by the court that has already overseen the litigation between these parties for more than two and a half years.

## II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY

*New Jersey I* was filed on January 10, 2017 and has been actively litigated ever since. *New Jersey II* was filed on July 17, 2019. *New Jersey I* been continuously presided over by the Hon. Claire C. Cecchi (D.J.) and the Hon. Mark Falk (M.J.) in the District of New Jersey, with the aid of a special discovery master (Judge Cavanaugh (Ret.)), and a Court-appointed mediator (Judge Hochberg (Ret.)). Both actions predate the above-captioned action. *New Jersey II* has likewise been assigned to Judge Cecci and Magistrate Judge Falk.

### A.    The Claims and Counterclaims in *New Jersey I*

*New Jersey I* centers on Veeva's theft and misuse of IQVIA's confidential and proprietary market research offerings. Ex. A (*New Jersey I* Compl.) at ¶ 73. IQVIA invests substantial resources into developing these market research offerings, which combine healthcare data, market

research, and proprietary analytics.  *Id.* at ¶ 17.  IQVIA provides these offerings to clients in the life sciences industry.  Under certain circumstances, IQVIA has agreed to allow its clients to share information from IQVIA's market research offerings with third-party vendors who provide services to IQVIA's clients.  *Id.* at ¶ 52.  When a client wishes to share IQVIA's information with a third-party vendor, and if IQVIA agrees to share that information, IQVIA and the vendor enter into a Third Party License Agreement ("TPA Agreement") that acknowledges the confidential and proprietary nature of the shared information and limits the ways the vendor may use that information.  *Id.* at ¶¶ 53-58.  Veeva is one such third-party vendor, with whom IQVIA has entered into more than 50 TPA Agreements.  *Id.* at ¶ 68.  IQVIA maintains that Veeva has, in violation of these agreements, improperly used IQVIA's information to improve its own commercial products in an attempt to gain an unfair competitive advantage over IQVIA.  *Id.* at ¶¶ 73, 74, 87, 119.

Veeva's counterclaims in *New Jersey I* allege that the steps IQVIA has taken to protect its data offerings constitute monopolistic behavior.  Many of Veeva's allegations in support of that claim involve the TPA Agreement process.  For example, Veeva claims, *inter alia*, that IQVIA "abuse[s]" the TPA Agreement process to prevent customers from switching from IQVIA's products. Ex. D (March 3, 2017 *New Jersey I* Ans. and Countercl.) at 47, ¶ 98.  Veeva also claims that IQVIA's data security concerns are mere "pretexts" for anticompetitive practices.  *Id.* at 45, ¶ 90.  At bottom, no matter how they are dressed up in antitrust jargon, Veeva's antitrust claims boil down to the assertion that IQVIA must allow Veeva, a direct competitor who IQVIA has sued for trade secret theft, access to IQVIA's trade secrets.  IQVIA, of course, disputes that the antitrust laws impose any such obligations.

**B.    Proceedings in the District Court of New Jersey To Date**

The United States District Court for the District of New Jersey has heard and ruled on dozens of motions in *New Jersey I* between Defendants and Veeva.  Notably, early on in the case, Veeva moved to have it transferred to this District.  Dkt No. 11.  That motion was *denied* more than two years ago.  *Quintiles IMS Incorporated v. Veeva Systems, Inc.*, 2017 WL 2766166 at *1 (D. N.J. June 23, 2017).  After weighing a "comprehensive list" of the public and private concerns

implicated by 28 U.S.C. § 1404(a), the court held that the selection of New Jersey as forum was "eminently reasonable," and that the case "belongs in New Jersey." *Id.* at *2, *3, *6. The court made specific findings about "substantial and meaningful connections between [IQVIA], New Jersey, and this case," noted that "many, if not all, of the claims may have accrued in New Jersey," and found that IQVIA "would incur palpable inconvenience if the matter was transferred away from New Jersey to California" in light of its limited California contacts. *Id.* at *4-5. The court reached a straightforward conclusion: "[t]he indisputable reality is no legal or factual basis to send this case across the Country has been shown." *Id.* at *5.

Several months later, Veeva's moved to dismiss IQVIA's complaint, and again the court ruled for IQVIA. *Quintiles IMS Incorporated v. Veeva Systems, Inc.*, 2017 WL 4842377 at *6 (D. N.J. Oct. 26, 2017). The following year, IQVIA's motion to dismiss Veeva's counterclaims was denied, as well. *Iqvia Inc. v. Veeva Sys. Inc.*, 2018 WL 4815547, at *6 (D. N.J. Oct. 3, 2018).

In the wake of these rulings, discovery has been proceeding in earnest. Millions of documents have been exchanged. Forty-two depositions have been taken so far, and seven more are noticed or pending. The District Judge and Magistrate Judge sitting in the District of New Jersey have overseen these discovery efforts with the aid of Special Master, Judge Cavanaugh (Ret.) who has repeatedly been called on to decide disputes and modify schedules to reflect the complex nature of the case and the corresponding voluminous record at issue. There have been well over a dozen hearings and scheduling conferences over the last two years. And in light of the complexity of the subject matter, Veeva even presented a tutorial on the relevant technology for the special master. Ex. I (Feb. 21, 2018 Veeva Technology Tutorial). The Court has also appointed a mediator, Judge Hochberg (Ret.), to oversee mediation efforts. Without a doubt, the investment of judicial resources to date—by no fewer than four judges—has been immense.

**C.    Veeva's Proposed New Counterclaims And IQVIA's Response**

Two months ago, in connection with a routine status conference, Veeva informed the special master appointed by the New Jersey court that it wished to amend its counterclaims to "add allegations regarding IQVIA's exclusionary conduct, directed at customers, to prevent them from

1    using Veeva's commercial data warehouse product" (Veeva Nitro)—the same subject and product

2    as in this case.  *See* Ex. E (June 3, 2019 Ltr. from Veeva to Hon. Dennis M. Cavanaugh (Ret.)).

3        In its own words, Veeva characterized its claims as "another example of the same kind of

4    antitrust, anticompetitive behavior that we alleged [in 2017] with respect to our Master Data

5    Management product."  Ex. G (Tr. of June 4, 2019 Status Conf.) at 13:1-3.  Veeva argued that

6    adding these counterclaims about the "Nitro" software product would not "cause any extensive

7    delay."  *See* Ex. G at 14:3-7.  Veeva also stated that its proposed amended counterclaims would

8    not require significant additional discovery, in part because of their overlap with the existing

9    litigation:  they raised "the same set of problems [as were raised] with respect to the data product

10   and the Master Data Management"—*i.e.*, as in their prior counterclaims.  *Id.* at 15:3-5.  Veeva

11   assured the New Jersey court that the contemplated new, Nitro counterclaims involved "the same

12   set of facts" and "the same type of behavior" as its existing claims.  *Id.* at 17:15-16.

13       And indeed, a review of the draft of the proposed anti-competition counterclaims provided

14   by Veeva to IQVIA makes clear that the proposed counterclaims sought to allege little more than

15   an updated version of the allegation of anticompetitive conduct by IQVIA already at issue in *New*

16   *Jersey I*.  *See, e.g.*, Ex. F (Second Amended Complaint redline dated June 1, 2019) at 27, ¶ 3

17   ("Veeva now amends its Counterclaims further to address IQVIA's more recent anticompetitive

18   acts in the life sciences Data Warehouse software market").  *See also id.* at 29, ¶ 8 (adding

19   allegations about IQVIA's use of "the same anticompetitive tactics" in a more recent time frame).

20   The conduct that formed the basis of Veeva's existing, pending counterclaims concerning Master

21   Data Management (or "MDM") software was alleged in Veeva's draft to also apply to an

22   additional, new software program called "Nitro."  *See id.* at 58 ¶ 140 ("Just as IQVIA's purported

23   data security concerns are pretextual and invalid with respect to Veeva's Network MDM software,

24   they are pretextual and invalid with respect to Nitro.").  Veeva alleged that in the fall of 2018

25   "IQVIA began blocking customers from using the IQVIA data they had purchased on Veeva's

26   Nitro platform," a "life sciences Data Warehouse software program."  *Id.* at 32-33 ¶ 8.

27       The Special Master reserved judgment on whether to permit amendment, awaiting an

28   actual filing.  Weeks passed, and Veeva did nothing.  Following the conference, IQVIA heard

nothing further about Veeva's proposed counterclaims for more than a month until on July 9, 2019, Veeva informed IQVIA that it would *not* be filing its proposed counterclaims.  *See* Ex. H (July 7, 2019 E-mail from S. Benz) ("Please be informed that Veeva has decided not to seek an amendment of its Counterclaims.").  Veeva gave no indication that it intended to file the Nitro claims as a separate case, or whether it intended to file the claims by a certain date.

However, Veeva continued to malign IQVIA as a monopolist in discovery in *New Jersey I*. For example, Veeva repeatedly asked IQVIA witnesses during depositions in *New Jersey I* about Veeva Nitro—*i.e.*, the product at the heart of its proposed amended counterclaims.[2]  To clear its name and resolve the issue once and for all, IQVIA filed *New Jersey II* on July 17, 2019, in the United States District Court for the District of New Jersey, the same court in which IQVIA and Veeva's antitrust and misappropriation dispute has been actively litigated for more than two years. IQVIA's complaint seeks a declaration that IQVIA is not required by any laws to turn over its trade secrets to a competitor with a demonstrated history of stealing trade secrets, while hiding evidence of its misconduct and smearing IQVIA's name in the marketplace.

The very next day, Veeva ran into this District and filed this action.  Mirroring the allegations made in their contemplated counterclaims in *New Jersey I*, Veeva alleges that IQVIA violates the antitrust and other laws by not providing its trade secrets to Veeva under its TPA process.  *See* Compl. at ¶¶ 7-10.  Veeva seeks to hold IQVIA liable under the Sherman Act, Compl. at ¶¶ 160, 167, 173, 179, the same subject on which IQVIA has already sought a declaratory judgment in *New Jersey II*.  *See* Ex. C (*New Jersey II* Compl.) at ¶¶ 103-05. Significant portions of Veeva's complaint in the instant action overlap with its proposed second amended counterclaims, which it acknowledged in open court were inextricably bound up with the ongoing litigation.

---

[2]  A data warehouse is an information technology system that exchanges data with one or more computer applications within a client organization to support analysis and reporting for that specific client organization.

III.    **ARGUMENT**

A.    **Under the First-to-File Rule, This Action Should be Dismissed, Stayed, or Transferred to the District of New Jersey**

The first-to-file rule is a well established doctrine of federal comity that allows a district court to dismiss, stay, or transfer an action when a similar complaint is on file in another federal district. *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 623 (9th Cir. 1991). *See also Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F. Supp. 2d 1289, 1293 (N.D. Cal. 2013) ("When found to be applicable, the [first-to-file] rule gives courts the power to transfer, stay, or dismiss the case."). The rule serves to avoid "duplicative lawsuits" and its "sole purpose is to promote judicial efficiency." *Tria Beauty, Inc. v. Oregon Aesthetic Techs., Inc.*, 2011 WL 13253662, at *2 (N.D. Cal. Mar. 10, 2011) (Alsup, J.).

The first-to-file rule "should not be disregarded lightly. When applying the first-to-file rule, courts should be driven to maximize economy, consistency, and comity." *Kohn Law Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1239-40 (9th Cir. 2015). "[U]nless compelling circumstances justify departure from the rule, the first-filing party should be permitted to proceed without concern about a conflicting order being issued in the later-filed action." *Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc.*, 179 F.R.D. 264, 269 (C.D. Cal. 1998). This "doctrine is designed to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments. Comity works most efficiently where previously-filed litigation is brought promptly to the attention of the district court, and the court defers." *Church of Scientology of Cal. v. U.S. Dep't of Army*, 611 F.2d 738, 750 (9th Cir. 1979) (internal citation omitted). Here, dismissal, stay, or transfer would promote efficiency by avoiding duplicative litigation and potentially conflicting rulings on similar or identical issues that arise from the same factual circumstances.

"Courts analyze three factors in determining whether to apply the first-to-file rule: (1) chronology of the actions; (2) similarity of the parties; and (3) similarity of the issues." *Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F. Supp. 2d 1289, 1293 (N.D. Cal. 2013). "Absent an exception to the first-to-file rule, a court of second-filing will defer to a court of first-

1  filing, if the two matters before them exhibit chronology, identity of parties, and similarity of

2  issues." *Intersearch Worldwide, Ltd. V. Intersearch Grp., Inc.*, 544 F. Supp. 2d 949, 957 (N.D.

3  Cal. 2008).

4      "[T]he first-to-file rule does not require exact identity of the parties; rather, it requires only

5  substantial similarity of parties.  Likewise, the issues in the earlier-filed case need only be

6  substantially similar to those in the subsequent case, a requirement that is met when there is

7  substantial overlap between the two suits." *Vado v. Champion Petfoods USA, Inc.*, 2019 WL

8  634644, at *5 (N.D. Cal. Feb. 14, 2019).  *See also Tria Beauty*, 2011 WL 13253662, at *2 (Alsup,

9  J.) ("The two actions need not be identical; it is enough that they are 'substantially similar.'").

10  The need for precise identity of issues is less where dismissal, stay, or transfer will "promote

11  efficiency" and "avoid duplicative litigation." *See Inherent.com v. Martindale-Hubbell*, 420 F.

12  Supp. 2d 1093, 1099 (N.D. Cal. 2006) (transferring case under first-to-file doctrine where

13  resolution of later-filed claims in California would "be intimately intertwined with the factual and

14  legal considerations" underlying related claims pending in New Jersey).

15      Because this action presents the same issues as the earlier-filed *New Jersey II* commenced

16  in the District of New Jersey, and both of the recently-filed cases are closely intertwined with the

17  long-pending *New Jersey I*, the issues raised by all three cases should be litigated together in the

18  same forum to preserve judicial and party resources, avoid inconsistent rulings, and promote

19  efficient adjudication.  Coordinated litigation can be achieved by complete dismissal of the instant

20  action, a stay pending resolution of the New Jersey cases, or transfer so that this action can

21  managed by the same Court presiding over the other cases.

22      The decision to dismiss, stay, or transfer an action under the first-to-file rule is within the

23  Court's discretion.  Dismissal is often appropriate where the earlier filed action presents the same

24  or similar issues.  *See, e.g.*, *Minor v. Sotheby's Inc.*, 2009 WL 55589, *1 (N.D. Cal. Jan. 7, 2009)

25  (dismissing second-filed action where the issues and were substantially similar and there was no

26  showing that prejudice would result from dismissal of later action); *Intersearch Worldwide*, 544 F.

27  Supp. 2d at 963 (dismissing later-filed action where claims would be resolved by the first-filed

28  action).  "A district court has the inherent power to stay its proceedings.  This power to stay is

incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Gustavson v. Mars, Inc.*, 2014 WL 6986421, at *2 (N.D. Cal. Dec. 10, 2014) (citation and internal quotation marks omitted).  Transfer is also proper where, as here, "the court of first filing provides adequate remedies." *Intersearch Worldwide*, 544 F. Supp. 2d at 963.

### 1.     *The New Jersey Actions Were Filed Before the Instant Action*

Both New Jersey cases indisputably predate the instant action.  *New Jersey I* has been pending for over 54 months.  *New Jersey II* was filed the day before Veeva filed this action.

That Veeva came in and filed its action only one day after one of the prior actions does not change the outcome.  Courts have rejected attempts to create arbitrary exceptions to the first-to-file rule, which "should not be disregarded lightly."  *Kohn*, 787 F.3d at 1239.  Indeed, courts have applied the first-to-file rule in instances where there were only two competing cases and they were filed even closer in time.  *See, e.g.*, *Intuitive Surgical, Inc. v. Cal. Inst. of Tech.*, 2007 WL 1150787, at *2-3 (N.D. Cal. Apr. 18, 2007) ("The central question is whether the first-to-file rule applies when two actions are filed a few hours apart. . . .  The Court finds that the first-to-file rule is applicable and requires deference to the first-filed court, notwithstanding the near simultaneous nature of the filings."); *Beverly Jewelly Co., Ltd. v. Tacori Enterprises*, 2006 WL 3304218, *4 n.3 (N.D. Ohio 2006) (applying first-filed rule to cases filed on the same day); *Nature's Way Prod., Inc. v. Zila Nutraceuticals, Inc.*, 2006 WL 2883205, at *1 (D. Utah Oct. 5, 2006) (applying first-to-file rule to cases filed less than two hours apart).

### 2.     *The Parties Are the Same in This Action and the New Jersey Actions*

The second factor—similarity of the parties—is also satisfied.  It is indisputable that the parties in the two New Jersey cases and those in the instant actions are not just similar, but identical.  *Compare, e.g.*, Dkt. Entry No. 1, at ¶¶ 14-26 (listing parties as Veeva, IQVIA, and IMS Software Services, Ltd.), *with* Ex. C (*New Jersey II* Compl.) at ¶¶ 17-22 (same).

### 3. *The Issues in This Action Are Substantially Similar to Those Presented in the New Jersey Actions*

The three lawsuits arise from the same factual allegations and present many of the same legal issues. Allowing this action to proceed in parallel with either or both of the New Jersey cases would present a very real risk of conflicting, inconsistent rulings.

In *New Jersey I*, Veeva's counterclaims assert that IQVIA violates the antitrust laws because IQVIA refuses to give Veeva proprietary, protected information.

*New Jersey II* (*IQVIA Inc. v. Veeva Sys. Inc.*, No. 19-cv-15517 (D. N.J.)) and this case squarely raise the same legal issues (between the same parties) as *New Jersey I*, just in the context of a new product. *New Jersey II* puts the issue as follows: whether "IQVIA is liable under the Sherman Act, any other federal antitrust law, or the laws of the states of New Jersey or California based on IQVIA's commercial business decision not to license Veeva to use IQVIA's proprietary and commercially sensitive trade secrets." *See* Ex. C (*New Jersey II* Compl.) at ¶ 104. *See also* Dkt. Entry No. 1 ¶¶ 2-13, 159-212.

IQVIA's own trade-secret claims in *New Jersey I* (filed in early 2017) are also closely intertwined with both actions. IQVIA alleges that "Veeva stole confidential and proprietary information" from IQVIA. Ex. A (*New Jersey I* Compl.) at ¶ 1. IQVIA's decision to not license Veeva's use of IQVIA's intellectual property—the supposedly anticompetitive conduct that forms the basis of this case—arose from concerns that Veeva would "misuse that data" or fail to stop others from misusing it. *See id.* at ¶ 119. In other words, Veeva's misuse of the relevant data forms, in part, the basis of *New Jersey I*, and is being actively litigated, satisfying the "substantial similarity" standard. *See Tria Beauty*, 2011 WL 13253662, at *2 (Alsup, J.) (finding substantial similarity in first-to-file analysis where the "claims in both suits arise from the same underlying facts"). IQVIA's allegations in *New Jersey I* would, if proven, establish a defense to Veeva's new claims in this District and entitle IQVIA to relief in the earlier-filed *New Jersey II*. *See* Ex. C (*New Jersey II* Compl.) at ¶ 1 ("IQVIA is not required by the antitrust laws to turn over its valuable proprietary information and trade secrets to a direct competitor with a demonstrated track record of stealing these same trade secrets.").

Veeva's claims in this District largely parrot its original antitrust counterclaims asserted (and sustained against IQVIA's motion to dismiss) in *New Jersey I*.  In both cases, Veeva alleges that IQVIA "is abusing its monopoly power . . . preventing Veeva and other competitors from providing data products and software application to life sciences companies."  *See* Ex. D (*New Jersey I* Ans. & Countercl.) at 23 ¶ 1.  There is a strong resemblance between this allegation from 2017 and Veeva's current action.  *See* Compl. ¶ 2 ("IQVIA exploits its Reference Data and Sales Data monopolies to maintain or enhance those monopolies, and to expand its market power into the life sciences commercial data warehouse ('CDW') market.").  The means of this supposed anticompetitive conduct is the same in both cases:  IQVIA allegedly "block[s] those paying customers from using IQVIA's Reference Data and Sales Data with Veeva software" by refusing to approve Third Party Access (TPA) agreements with them.  Compl. ¶ 6.  *Compare with* Ex. D at 24 ¶ 2 (alleging that IQVIA is "refusing customer requests to use [IQVIA] Reference Data products with Veeva's MDM software product").[3]  Veeva has been actively pursuing discovery about Veeva Nitro in *New Jersey I*, having asked about data warehouse topics in many depositions in the litigation (Nitro is commercial data warehouse software).  In fact, Veeva has already questioned at least 9 witnesses on the topic of its Nitro product and TPA-related issues relevant to the parties' dispute concerning Nitro.[4]  That Veeva has been seeking to elicit evidence in *New Jersey I* about the same anticompetitive conduct alleged in this case (including concerning the specific product at issue) speaks volumes about the inefficiency of allowing this case to proceed in parallel alongside the New Jersey actions.[5]

---

[3]  The allegations between the two actions parrot one another, often word for word.  *Compare, e.g.*, Compl. ¶ 10 *with* Ex. D (March 3, 2017 *New Jersey I* Ans. and Countercl.) at 25 ¶ 5, Compl. ¶ 11 *with* Ex. D at 25 ¶ 4, Compl. ¶ 94 *with* Ex. D at 38 ¶ 61, Compl. ¶ 108 *with* Ex. D at 40 ¶ 67.

[4]  The protective order in place in *New Jersey I* prevents IQVIA from attaching or specifically quoting the relevant passages of these depositions.  But again, the fact that the protective order in *New Jersey I* covers Veeva's discovery into the same circumstances that form the basis of its claims in this Court proves that this case belongs in New Jersey.

[5]  The fact that Veeva's Nitro claims require some new discovery does not undermine the obvious connection between Veeva's old and new claims or the powerful efficiencies of litigating the new claims in New Jersey.

1    The only difference between *New Jersey I* and the new suit in this Court is simply the type

2    of Veeva software at issue.  In *New Jersey I*, Veeva has long alleged that IQVIA users of the

3    Veeva Network product should have access to IQVIA's Reference and Sales Data, and

4    contemplated the same claim as to its Nitro product.  In this action, the same allegations are

5    asserted with regard Nitro.  *See* Compl. ¶¶ 99, 105, 108.  Because of this extensive overlap, Veeva

6    even references its own counterclaims in *New Jersey I* as support for its allegations in this case.

7    *See* Compl. ¶¶ 99-104.  Veeva thus alleges that  IQVIA knew that its actions against Nitro "would

8    succeed because it had already deployed them in the life sciences MDM software market to block

9    Veeva Network."  Compl. ¶ 108.  Veeva also makes clear that IQVIA's explanation for its refusal

10   to share its proprietary data is the same for each type of software:  concerns about safeguarding

11   "IQVIA's intellectual property."  *Compare* Compl. ¶ 115 *with* Ex. D at 44, ¶ 83 (alleging that

12   IQVIA's "security concerns were not genuine").  The same security concerns are at the center of

13   IQVIA's claims against Veeva in *New Jersey I*.

14   Finally, as discussed above, Veeva has admitted that the Nitro-focused claims presented in

15   this action are merely "another example of the same kind of antitrust, anticompetitive behavior" it

16   already asserted in its counterclaims against IQVIA in early 2017, that they raise "the same set of

17   problems [as were raised] with respect to the data product and the Master Data Management" (*i.e.*,

18   as in the earlier counterclaims), and that they involve "the same set of facts" and "the same type of

19   behavior" as Veeva's existing claims.  *See* Ex. G at 13:1-3, 15:3-5, 17:15-16.

20               **4.    New Jersey II *is Not An Anticipatory Suit***

21   The fact that *New Jersey II* was filed one day earlier than the instant action does not render

22   it "anticipatory" for purposes of this analysis.  In fact, the opposite appears to be true:  Veeva's

23   new suit is "reactionary."  "A suit is 'anticipatory' for the purposes of being an exception to the

24   first-to-file rule if the plaintiff in the first-filed action filed suit on receipt of *specific, concrete*

25   *indications* that a suit by the defendant was imminent." *Tria Beauty*, 2011 WL 13253662, at *2

26   (Alsup, J.) (emphasis in original) (internal quotation marks omitted).  *See also BizCloud, Inc. v.*

27   *Computer Scis. Corp.*, 2014 WL 1724762, at *2 (N.D. Cal. Apr. 29, 2014) (same).  Here, there

28   were no "specific, concrete" indications that a suit by Veeva was imminent.  Far from it:  Veeva

told the New Jersey court (and IQVIA) that it wanted to file amended counterclaims in (appropriately) New Jersey, and then, for six weeks, did nothing.

As the terms suggest, the standard of "specific" and "concrete" indications of an "imminent" suit is a demanding one. Thus, for example, "a letter which suggests the possibility of legal action, however, in order to encourage or further a dialogue, is not a specific, imminent threat of legal action." *Intersearch Worldwide*, 544 F. Supp. 2d at 960 (internal quotation marks omitted). Nor is a "reasonable apprehension" of a controversy the same as an imminent threat of litigation. *Id. See also Tria Beauty*, 2011 WL 13253662, at *3 (Alsup, J.) (granting defendant's motion to stay under first-to-file rule and holding that declaratory judgment action filed first by four days was not anticipatory where cease-and-desist letter from plaintiff told defendant that it "will proceed accordingly").

The mere fact that an action seeks a declaratory judgment does not cause the first-to-file rule to apply with less force. *See Holmes Grp., Inc. v. Hamilton Beach/Proctor Silex, Inc.*, 249 F. Supp. 2d 12, 15 (D. Mass. 2002) ("where two identical actions are pending concurrently in two federal courts, the first-filed action is generally preferred, even if it is a request for a declaratory judgment").[6] When considering claims that a declaratory judgment suit is entitled to less deference than any other action, courts look to whether "a party engaged in bad faith conduct, by inducing an opposing party to delay filing of a lawsuit, so that he could file a preemptive lawsuit." *Doubletree Partners, L.P. v. Land Am. Am. Title Co.*, 2008 WL 5119599, at *3 (N.D. Tex. Dec. 3, 2008). There is nothing like that here.

IQVIA learned that Veeva planned to assert counterclaims concerning its "Nitro" product in June 2019, when it sought to amend its counterclaims in *New Jersey I*. After the district court reserved judgment, Veeva did not raise plans to assert its contemplated counterclaims again in any setting, formal or otherwise. In fact, Veeva informed IQVIA that it would *not* be filing its

---

[6] *See also, e.g.*, *W. Pac. Signal, LLC v. Trafficware Grp., Inc.*, 2018 WL 3109809, at *5-6 (N.D. Cal. June 25, 2018) (applying first-to-file rule where first action was for declaratory judgment); *Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980, 992 (N.D. Cal. 2011) (same); *Sony Computer Entm't Am. Inc. v. Am. Med. Response, Inc.*, 2007 WL 781969, at *4 (N.D. Cal. Mar. 13, 2007) (same).

proposed counterclaims, and gave no indication—clear or otherwise—that it intended to file those claims as a separate case elsewhere. *See* Ex. H (July 7, 2019 E-mail from S. Benz) ("Please be informed that Veeva has decided not to seek an amendment of its Counterclaims. ").

IQVIA thus had *zero* actual, concrete notice of an imminent filing. IQVIA had "reasonable apprehension of a legal controversy"—thus, the declaratory judgment action—but that falls well short of the requisite "direct threat of imminent litigation." As this Court has observed, if the possibility of litigation were sufficient to render a suit anticipatory, then "each time a party sought declaratory judgement in one forum, a defendant filing a second suit in a forum more favorable to defendant could always prevail under the anticipatory filing exception." *See Tria Beauty*, 2011 WL 13253662, at *3 (Alsup, J.). Veeva's apparent effort to do just that should be rejected.

### 5.    *The Equities Weigh In Favor of Dismissal, Stay, or Transfer*

When there are competing actions involving similar parties and issues, the court in which the earlier-filed action was initiated is the proper forum to assess the equities of the competing venues. *See Power Integrations, Inc. v. ON Semiconductor Corp.*, 2017 WL 1065334, at *3 (N.D. Cal. Mar. 21, 2017) ("[I]t is the court with the first-filed action that should normally weigh the balance of convenience and any other factors that might create an exception to the first-to-file rule.") (internal quotation marks omitted); *Intuitive Surgical*, 2007 WL 1150787, at *2 (same). The conservation of scarce judicial resources also outweighs party convenience under the first-to-file doctrine. *See Glob. Music Rights, LLC v. Radio Music License Comm., Inc.*, 2017 WL 3449606, at *7 (C.D. Cal. Apr. 7, 2017) ("Moreover, though it may be more convenient for Plaintiff to litigate here than in Pennsylvania, the first-to-file rule counsels that judicial efficiency generally outweighs the convenience of the parties.").

Were the Court to nevertheless consider the equities as they apply to the parties, they weigh squarely against allowing this action to proceed. *First*, that the parties have been litigating, for more than two and a half years, misappropriation and related antitrust claims to this case in New Jersey weighs heavily in favor of dismissal. The New Jersey court is in the best position to

1  address the substance of the allegations asserted in this case, as well as to determine the best

2  manner of case management.[7]

3          Indeed, "the pendency of an action in another district is important because of the positive

4  effects it might have in possible consolidation of discovery and convenience to witnesses and

5  parties." *A. J. Indus., Inc. v. U.S. Dist. Court for Cent. Dist. of Cal.*, 503 F.2d 384, 389 (9th Cir.

6  1974); *see also, e.g.*, *Zurich Am. Ins. Co. v. DS Waters of Am., Inc.*, 2013 WL 12128686, at *3

7  (C.D. Cal. Mar. 18, 2013).  Many employees and officers of "all parties in the instant action have

8  been deposed in [*New Jersey I*]." *Ben Chang v. Biosuccess Biotech, Co.*, 2014 WL 12703706, at

9  *3 (N.D. Cal. May 30, 2014).  Even if discovery relating to Veeva's antitrust claims in *New Jersey

10 I* is "not [] identical to the discovery in the instant case," Veeva has already represented that "there

11 will be at least some overlap, which advances efficiency and convenience."  *See id.*; *accord* Ex. G

12 (Tr. of June 4, 2019 Status Conf.) at 14:2-7, 15:3-10, 17:15-16 (litigating the Nitro antitrust issues

13 would not "cause any extensive delay" because it raises "the same set of problems" as their prior

14 counterclaims" and is "the same set of facts," and "the same type of behavior").  Given this

15 overlap, it is important to avoid the risk of "inconsistent rulings."  *See Ben Chang*, 2014 WL

16 12703706, at *3.  Finally, the judges and special master overseeing the New Jersey litigation have

17 considerable familiarity with the issues, having adjudicated dozens of disputes about myriad

18 aspects of the case.

19         *Second*, convenience of the parties weighs heavily in favor of dismissal.  This Court need

20 only look to the analysis conducted by the District Court of New Jersey which has *already decided*

21 that Veeva's *antitrust counterclaims*, which raise—in Veeva's own words—"the same set of

22 problems" as this case, are best adjudicated in New Jersey.  *Quintiles IMS Inc. v. Veeva Sys., Inc.*,

23 2017 WL 2766166 (D. N.J. June 23, 2017).

24

25         [7]  This Court need not determine the feasibility or desirability of consolidating this case with
26 either or both of the New Jersey Actions.  Consolidation or coordination of these related matters
   can take many forms and the precise manner of joint management should, respectfully, be
27 determined in the first instance by those judicial officers with years of familiarity with these
28 parties and the issues presented in the three cases.

1    The court found IQVIA's "connections to New Jersey" to be "overwhelming." *Id.* at *3.

2 Among other things, IQVIA "conducts a significant portion of its business" there; has "four

3 offices in New Jersey employing over 700 people, with one of its largest offices located in

4 Parsippany totaling over 83,000 square feet"; "is home to certain members of [IQVIA]'s senior

5 leadership team—including legal, finance, human resources, and corporate development" and its

6 "major data center and employees with responsibilities for technology solutions." *Id.* Veeva

7 likewise has "admit[ted] to having dealings, meetings, and customers in New Jersey, as well as

8 conducing substantial business in New York. In fact, Veeva has an office in Princeton, New

9 Jersey, and employs approximately 65 individuals in this State that may relate to the products at

10 issue in the case. Similarly, it appears that the entity responsible for Veeva's competing health

11 care data service is located in Fort Washington, Pennsylvania." *Id.* at *5 (internal citations

12 omitted). Moreover, Veeva's complaint in this case makes clear that the issues in dispute involve

13 the healthcare services industry, much of which is headquartered in New Jersey. As of 2017,

14 "Veeva identifie[d] 77 clients on its website and 11 have their U.S. headquarters in New Jersey

15 and another 10 have headquarters in Pennsylvania, Connecticut, New York or Delaware, while

16 only 12 have headquarters in California." *Id.* (internal citations and quotation marks omitted).

17 And because both IQVIA and Veeva serve the same healthcare services industry in New Jersey

18 the court noted the likelihood that "customers in and around the New Jersey area could be

19 witnesses in the case." *Id.* at *5. This statement that has been borne out by the subsequent

20 litigation. The selection of the District of New Jersey was held to be "plainly appropriate" and the

21 factual connection to New Jersey so strong that it "would ***likely be more than sufficient to***

22 ***transfer the case* to *New Jersey if it had been filed in California*." *Id.* at *4 (emphasis added).

23    The question of where this litigation belongs as of August 2019 is even more

24 straightforward than the question of New Jersey or California in mid-2017, when Veeva's motion

25 to transfer was denied. At this point, "the proper inquiry is not whether [California] is more

26 convenient than [New Jersey] in the abstract but instead whether sanctioning a second, nearly

27 identical action here is more convenient" than dismissing, staying, or transferring the case. *See*

28

*Wiley v. Gerber Prod. Co.*, 667 F. Supp. 2d 171, 173 (D. Mass. 2009). There is no question that litigating in one forum is more convenient than litigating in two.

In sum, the most appropriate forum for these actions is the District of New Jersey, where Veeva and IQVIA have been litigating Veeva's access to IQVIA's intellectual property for well over two years, and where both earlier-filed related cases are pending. The overlap in claims, parties, and evidence means that both this Court and Judge Cecchi would be presiding over litigation rife with potential for rulings that could duplicate or conflict with the other litigation if cases were allowed to proceed in parallel in both New Jersey and this District. *Cf. Tria Beauty*, 2011 WL 13253662, at *4 (Alsup, J.) ("While the likelihood of dismissal in the first suit is unclear, an ounce of prevention is worth a pound of cure. This order errs on the side of caution in avoidance of duplicative litigation."). Avoiding such a scenario is the reason the first-to-file rule exists and is faithfully enforced. *See Inherent.com*, 420 F. Supp. 2d at 1097 (purpose of the first-to-file rule is to "promote efficiency and to avoid duplicative litigation"); *Wells v. Cingular Wireless LLC*, 2006 WL 2792432, at *3 (N.D. Cal. Sept. 27, 2006) (Alsup, J.) ("it is highly inefficient for this district to expend resources adjudicating a dispute virtually identical to one already pending in our sister district").[8]

## B.    Transfer is Also Appropriate Pursuant to 28 U.S.C. § 1404(a)

Under 28 U.S.C. § 1404(a), a case may be transferred from one federal district to another "[f]or the convenience of parties and witnesses, in the interest of justice" so long as the case "might have been brought" in the transferee district in the first instance. "The purpose of § 1404(a) is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *King-Scott v. Univ. Med. Pharm. Corp.*, 2010 WL 1815431, at *1 (S.D. Cal. May 6, 2010). Each of these factors weighs in favor of transferring this action to the District of New Jersey.

---

[8]    If the Court elects to not dismiss or transfer the instant action, imposing a stay is also an option. Although not as efficient as the other remedies, a stay would prevent the cases from being litigated simultaneously on two separate fronts, which would all but guarantee duplicative efforts and risk inconsistent rulings.

1  "Courts undertake a two-step analysis to determine whether transfer is proper. First, courts

2  determine whether the action could have been brought in the target district. The second step

3  consists of an individualized, case-by-case consideration of convenience and fairness. A district

4  court has discretion to adjudicate motions for transfer according to an individualized case-by-case

5  consideration of convenience and fairness." *K.H.B. by & through K.D.B. v. UnitedHealthcare Ins.

6  Co.*, 2018 WL 4913666, at *2 (N.D. Cal. Oct. 10, 2018) (Alsup, J.) (internal quotation marks and

7  citations omitted).

8  There is no reason that the instant action could not have been brought in New Jersey. The

9  federal Clayton Act contains nationwide venue provisions. *See* 15 U.S.C. § 22. Moreover, a

10  variety of equitable factors including the convenience of litigants and witnesses, considerations of

11  judicial economy, the need to guard against inconsistent rulings, and other administrative

12  considerations all demonstrate that New Jersey is the superior venue for the instant action, should

13  it not be dismissed in its entirety. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir.

14  2000) ("Under § 1404(a), the district court has discretion to adjudicate motions for transfer

15  according to an individualized, case-by-case consideration of convenience and fairness.") (internal

16  quotation marks omitted).

17  Perhaps most crucially in these circumstances, the multi-year history of *New Jersey I*

18  makes clear that New Jersey is by far the most efficient venue for the issues raised by all three

19  actions to be resolved. The parties' dispositive briefing and extensive discovery motion practice

20  there gives the District of New Jersey an intimate familiarity with the issues bound up in all three

21  cases. This familiarity extends to the district judge, the magistrate judge, the special master, and

22  the Court-appointed mediator. This prior knowledge weighs heavily in favor of transfer to New

23  Jersey. *See, e.g.*, *Cadenasso v. Metro. Life Ins. Co.*, 2014 WL 1510853, at *7-8 (N.D. Cal. Apr.

24  15, 2014) (transferring case under § 1404(a) where first-filed court was familiar with the facts

25  underlying subsequent action, and holding that first-to-file rule provided "strong" alternative basis

26  for same result); *King-Scott v. Univ. Med. Pharm., Corp.*, 2010 WL 1815431, at *2 (S.D. Cal.

27  May 6, 2010) (one factor in transfer determination is looking for "the court most familiar with the

28  claims between parties").

The "interest of justice" that § 1404(a) references includes concerns such as "ensuring speedy trials" and "trying related litigation together." *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1134 (C.D. Cal. 2009). These factors clearly militate in favor of transfer to the District that is already overseeing substantially overlapping issues and has engaged with the substantive issues presented by the litigation. Also relevant to the "interest of justice" is the feasibility of consolidation with prior, related cases. *See Cardoza v. T-Mobile USA Inc.*, 2009 WL 723843, at *5 (N.D. Cal. Mar. 18, 2009) ("The feasibility of consolidation is a significant factor in a transfer decision, and even the pendency of an action in another district is important because of the positive effects it might have in possible consolidation of discovery and convenience to witnesses and parties."). New Jersey, where a closely related action has been litigated since early 2017 provides unique benefits and important efficiencies by virtue of the ongoing litigation in that District. Once transferred, the New Jersey court—already knowledgeable about the relevant disputes, industry, and legal issues—can determine whether and the appropriate extent to which coordination between this case and *New Jersey I* and/or *New Jersey II* best serves the interests of judicial economy.

## IV.    **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court dismiss this action in its entirety. In the alternative, Defendants request that the Court stay this action pending resolution of the New Jersey actions or transfer it to the District of New Jersey.

Dated: August 15, 2019          QUINN EMANUEL URQUHART & SULLIVAN, LLP

                                By:      /s/ *Stephen A. Broome*
                                         Steig D. Olson
                                         Marlo A. Pecora
                                         Stephen A. Broome
                                         Sam S. Stake
                                         Stephen A. Swedlow

                                         *Attorneys for Defendants IQVIA Inc. and IMS Software Services, Ltd.*