IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

VEEVA SYSTEMS, INC.,

    Plaintiff,

v.

IQVIA INC. and IMS SOFTWARE SERVICES, LTD.,

    Defendants.

No. C 19-04137 WHA

**ORDER RE MOTION TO DISMISS, STAY, OR TRANSFER AND VACATING HEARING**

**INTRODUCTION**

In this antitrust action, defendants move to dismiss, stay, or transfer. Plaintiff opposes. For the following reasons, the motion to transfer is **GRANTED**.

**STATEMENT**

Central to this action are the following life sciences data and software products: reference data, sales data, commercial data warehouse software, customer relationship management software, and master data management software.

Life sciences reference data includes the names, contact information, and affiliations of doctors, hospitals, clinics, and other medical professionals and organizations. Life sciences companies purchase and use such information for sales, marketing, and compliance purposes. Life sciences sales data tracks the prescriptions written and volumes of drugs sold in a given geographic region. Life sciences companies use such data to analyze their product performance and marketing (Compl. ¶¶ 39, 40, 52, 54).

Life sciences companies use commercial data warehouse software to store, organize, and analyze their reference and sales data. Life sciences companies use customer relationship management software to collate, automate, and synchronize their reference and sales data in order to better manage their customer interactions and enhance sales. Life sciences companies use master data management software to identify reference and sales data sources within a customer's business, collect the data in a central repository, and integrate that data in a structure that facilitates consistent extraction for analysis (*id.* at ¶¶ 69, 70, 79, 83).

Plaintiff Veeva Systems Inc., headquartered in Pleasanton, is a pharmaceutical data and software company. Defendant IMS Software is a software company headquartered in Connecticut. Defendant IQVIA, headquartered in Connecticut and North Carolina, is also a pharmaceutical data and software company. Veeva and IQVIA license life science data and software products that enable companies to use life sciences reference and sales data. IQVIA allegedly maintains a 70% share of the reference data market. IQVIA also requires its customers to obtain a third-party access agreement before hosting IQVIA data on third-party software platforms (*id.* at ¶¶ 3–5, 25, 30).

In January 2017, IQVIA asserted claims against Veeva for theft of trade secrets and misuse of IQVIA's confidential and proprietary market research offerings in the United States District Court for the District of New Jersey. In response, Veeva asserted federal antitrust violations as counterclaims against IQVIA in the MDM market based on IQVIA allegedly delaying or refusing to sign third-party access agreements to prevent customers from hosting IQVIA data. In March 2017, Veeva moved to transfer the action to the United States District Court for the Northern District of California. The motion was denied. Litigation on the matter has continued and discovery is scheduled to close in September 2019. *IQVIA Inc., et al. v. Veeva Systems Inc.*, Case No. 2:17-177-CCC-MF (Dkt. Nos. 1, 11, 12).

In mid-2018, Veeva launched a CDW product called Nitro. At the time, IQVIA already offered its own CDW product called IQVIA Data Warehouse. In September 2018, one of Veeva's first Nitro customers submitted a third party agreement request to use IQVIA sales data with Nitro. IQVIA initially refused the request and later blocked NPI numbers and other

publicly available identifiers. This same course of conduct allegedly occurred with various other customers (Compl. ¶¶ 109–11).

In June 2019, Veeva told IQVIA's counsel that it planned to amend its counterclaims to include allegations regarding Nitro (Mot. Ex. E). On July 11, Veeva told IQVIA and Special Master former Judge Dennis Cavanaugh that it would not seek leave to amend its counterclaims (Opp. Ex. E 24:23–25). On July 17, 2019, IQVIA filed an action in the United States District Court for the District of New Jersey seeking declaratory relief that "IQVIA is not liable to Veeva based on any decisions not to enter into TPA Agreements permitting IQVIA's Market Research Offerings to be inputted into Veeva Nitro, or any later-introduced Veeva SaaS products, under any federal antitrust law, including Section 2 of the Sherman Act, or the laws of the states of New Jersey or California." *IQVIA Inc. v. Veeva Systems Inc.,* Case No. 2:19-15517-CCC-MF (Dkt. No. 1). The next day, Veeva filed the instant action in our district. Defendants now move to dismiss, stay, or transfer the action to the United States District Court for the District of New Jersey (Dkt. Nos. 1, 40). Pursuant to our local civil rule 7-1(b), this order finds plaintiff's motion suitable for submission without oral argument and hereby **VACATES** the October 10 hearing.

**ANALYSIS**

**1.    FIRST-TO-FILE.**

When cases involving the same parties and issues have been filed in two different districts, a federal district court has discretion to dismiss, stay, or transfer a case to another district court. *Kohn Law Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1239 (9th Cir. 2015). When deciding whether to do so, the court looks to three threshold factors: (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of issues. *Id*. at 1240. Here, all three required factors are met. Both cases pending in the United States District Court for the District of New Jersey predate the instant action and the parties are the same in all actions.

The three actions also involve substantially similar issues. To determine whether the suits involve substantially similar issues, our court of appeals looks at whether there is

3

"substantial overlap." *Kohn*, 787 F.3d at 1241. The complaint in the instant action and Veeva's counterclaims in the earliest action share similar claims for relief such as attempted monopolization, monopoly maintenance, monopoly leveraging of reference and sales data, intentional interference with contractual relations, intentional interference with prospective economic advantage, violations of the Cartwright Act, and violations of the UCL. Although the previous actions are related to CRM and MDM software and this instant action is only related to CDW software, all of the actions still share core overlapping questions regarding whether IQVIA engaged in anti-competitive behavior in the context of third party agreements that allow customers to use IQVIA's data on software platforms by third parties such as Veeva. Because of this substantial overlap, the first-to-file rule is appropriate.

### 2. ANTICIPATORY FILING EXCEPTION.

A court may still decline to apply the first-to-file rule if a previous suit was filed anticipatorily. Veeva argues that once it told Special Master Judge Cavanaugh that it would not move to amend its counterclaims anymore, IQVIA knew Veeva was going to file the instant action and accordingly filed an action requesting declaratory relief. Veeva points to its March 2017 motion to transfer to the United States District Court for the Northern District of California as further evidence IQVIA had reason to know Veeva was planning on filing the instant action.

Although these facts allude to the possibility of Veeva filing the instant action, they are not enough. Veeva likens this case to *S&N Enterprises, Inc. of Virgina v. WoWee USA, Inc* where a suit was deemed anticipatory when defendant informed plaintiff it would either amend the complaint or dismiss without prejudice and file elsewhere. Case No. 18-cv-02255-GPC, 2018 WL 6266569, at *5 (S.D. Cal. Nov. 30, 2018). Unlike the defendants in *S&N,* however, Veeva never informed IQVIA it planned to refile the claims elsewhere. Veeva simply provided a copy of proposed amended counterclaims to IQVIA to which IQVIA responded it would oppose, waited for six weeks, and then informed IQVIA it would not file an amendment. This string of communication and events was not sufficient to put IQVIA on notice that Veeva would

file a separate action in our district. Because this action was not anticipatorily filed, the exception does not apply and the first-to-file rule remains appropriate.

**3. DISMISS, STAY, OR TRANSFER.**

Having concluded that "first-to-file" rule applies, this order now addresses whether a dismissal, stay or transfer is most appropriate. Ruling on a motion to transfer requires an equities analysis. Here, the convenience of the parties and witnesses and the location of the records are largely unaffected by the venue. Importantly here is that although the actions are based on different data input software products, there is significant overlap among the claims and underlying facts. That the first action, which includes Veeva's Cartwright Act and UCL counterclaims based on California law, has been litigated for more than two years in the United States District Court for the District of New Jersey means the court will have familiarity with these claims and issue consistent rulings. Given this judicial economy, transferring the action to the United States District Court for the District of New Jersey is appropriate.

## CONCLUSION

For the foregoing reasons, defendant's motion to transfer is **GRANTED**. The October 10 hearing on the motion is **VACATED**. The Clerk shall **TRANSFER** this civil action to the United States District Court for the District of New Jersey.

**IT IS SO ORDERED.**

Dated: September 26, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE