**Joseph A. Hayden, Jr.**
Member of the Firm
jhayden@pashmanstein.com
Direct: 201.639.2004



August 2, 2021

*Via ECF*
The Honorable Mark Falk, U.S.M.J.
United States District Court for the District of New Jersey
Frank R. Lautenberg U.S. P.O. & Courthouse Bldg.
1 Federal Square
Newark, New Jersey 07101

**Re:** *IQVIA Inc. v. Veeva Systems, Inc.*
Case No. 2:19-cv-15517-JXN-MF

Dear Magistrate Judge Falk:

Veeva Systems Inc. ("Veeva") writes in response to the letter submitted by IQVIA Inc. ("IQVIA") on July 27, 2021, ECF No. 80 in the above-referenced case.

Veeva respectfully requests oral argument on its motion to lift stay (Dkt. 63) so that Veeva can clarify the intervening developments that support the motion and expose IQVIA's mischaracterizations. IQVIA misdirects toward inapposite excerpts from the Sanctions Order while losing sight of the issues at hand. The question is whether, in light of the Sanctions Order, the stay on *IQVIA II* remains justified. It does not.

**A. IQVIA's Motion for "Dispositive Sanctions" Was Denied**

The Court entered the stay on *IQVIA II* because it found that IQVIA's dispositive motions in *IQVIA I* might resolve *IQVIA II*. Dkt. 61 at 5–6. IQVIA identified two dispositive motions in particular—its sanctions motion and its "forthcoming" summary judgment motion—claiming each was "likely to resolve" both cases. Dkt. 33-1 at 12. IQVIA was wrong. The Special Master rejected IQVIA's request for dispositive sanctions and recommended submitting only three permissive instructions to the jury. *IQVIA I*, Case No. 2:17-cv-00177 (D.N.J. May 7, 2021) (Dkt. 349). Veeva is appealing this recommendation to Judge Neals.  IQVIA did not object to the Sanctions Order.  Since IQVIA does not request staying *IQVIA II* pending trial in *IQVIA I*, the Sanctions Order can no longer support the stay. Dkt. 33-1 at 23. IQVIA does not appear to oppose that fundamental point.

IQVIA's only hope for dispositive relief is its unfiled, unripe summary judgment motion. Dkt. 80 at 3–4. Since IQVIA's first attempt at dispositive relief faltered, the likelihood that its

Court Plaza South
21 Main Street, Suite 200
Hackensack, NJ

Phone:  201.488.8200
Fax:  201.488.5556
www.pashmanstein.com

The Hon. Mark Falk
U.S. Chief Magistrate Judge
August 2, 2021
Page 2



second effort will succeed is speculative at best. IQVIA's prospects of success on summary judgment hinge on evidence that Veeva has not produced and has no obligation to produce. *See* Dkt. 80 at 3–4 (IQVIA explains that its "forthcoming" summary judgment motion "will depend on" unproduced discovery). Veeva has demonstrated that it cannot be compelled to produce boundless discovery, including entire software source-code repositories and forensic examination of hundreds of computers, particularly where IQVIA still has not adequately notified Veeva of the supposed "trade secrets" at issue. *See IQVIA I*, Case No. 2:17-cv-00177 (Dkt. 194-1 at 19–21). In short, IQVIA asks this Court to maintain the stay on *IQVIA II* because evidence that Veeva has no duty to produce *might* support IQVIA's unfiled summary judgment motion in *IQVIA I*, which *might* implicate *IQVIA II*. Needless to say, "the likelihood of said outcome is too speculative to warrant staying" *IQVIA II*. *United States v. Pechiney Plastic Packaging, Inc.*, 2013 WL 3336792, at *4 (D.N.J. July 2, 2013).

IQVIA invokes the Sanctions Order to support its prospects of success on its unfiled summary judgment motion, citing Judge Cavanaugh's statement that "Veeva was well-aware that it was misappropriating IQVIA data." Dkt. 80 at 2. The sanctions dispute did not present the issue of Veeva's antitrust claims against IQVIA, which are going forward in the MDM and Nitro case. Nor did the sanctions dispute present trade-secret misappropriation, and IQVIA's sanctions motion did not attempt to prove trade-secret misappropriation. Indeed, at the sanctions hearing, IQVIA explicitly argued that it "can't prove" misappropriation. Ex. 1 at 37:9–11. Any statements in the Sanctions Order purporting to address trade-secrets misappropriation plainly exceeded the questions presented and cannot support IQVIA's "forthcoming" summary judgment motion. *See Manasco v. Rogers*, 2007 WL 9789681, at *2 (D.N.J. Feb. 28, 2007) (explaining "it is long established that courts should only address those issues necessary to decide the question before the Court").

As Veeva explained in its objections to the Sanctions Order, the alleged "misappropriation" involved a microscopic sliver of publicly available addresses that Veeva had already obtained from other public sources. *IQVIA I*, Case No. 2:17-cv-00177 (Dkt. 360 at 10–12). IQVIA was so unmoved by that supposed "misappropriation" that it continues to authorize Veeva's access to the same data for the same purposes to this day. *Id*. Despite having 48 days to do so, IQVIA mustered no serious responses to those key points.

### B. Veeva's Claims in this Case are Distinct

To repeat, the Court stayed *IQVIA II* because it found that dispositive motions in *IQVIA I* might simplify *IQVIA II*. Dkt. 61 at 5–6. Yet *IQVIA II* raises a host of issues bearing no relation to *IQVIA I*. *IQVIA II* addresses IQVIA's *new* exclusionary conduct to prevent *different* customers from using *distinct* Veeva products at *different times*. While *IQVIA I*'s focus is Veeva's Master Data Management software product, *IQVIA II* addresses wholly distinct Veeva products such as Nitro, Andi, Align, and Vault. IQVIA *admits* that Veeva's software products have "different purposes, functionalities, and risk profile[s]." Dkt. 33-1 at 8.

The Hon. Mark Falk
U.S. Chief Magistrate Judge
August 2, 2021
Page 3



      The stay is especially problematic in light of IQVIA's RSAA violations. *IQVIA I* bears no relation to IQVIA's RSAA infringements that undergird Veeva's intentional-interference-with-contracts claim in *IQVIA II*. Dkt. 69 ¶¶ 17, 237–44. The stay neutralizes Veeva's efforts to protect its proprietary software applications from IQVIA's ongoing intrusions. IQVIA now claims, without evidence, that the RSAA issue is "resolved." Dkt. 80 at 2. Not so. As Exhibit 1 to Veeva's July 23, 2021 Letter demonstrates, despite Veeva's intentional-interference-with-contracts claim in *IQVIA II,* and despite IQVIA's knowledge that it cannot access Veeva's proprietary applications without an RSAA, IQVIA continues to do so through at least four different customer accounts. Dkt. 79 at 9–10. Indeed, although IQVIA knew it was accessing Veeva software, IQVIA purposely "held off on RSAA for several" such accounts. *Id*. at 7. Emboldened by the stay, IQVIA's willful RSAA violations continue. The Court should lift the stay so Veeva can hold IQVIA accountable.

                                                  Respectfully,

                                                *s/ Joseph A. Hayden, Jr*
                                                Joseph A. Hayden, Jr.

Attachment

cc:      Counsel of record

# Reply Exhibit 1

```
                                                              Page 1
 1
 2   UNITED STATES DISTRICT COURT
 3   DISTRICT OF NEW JERSEY
 4   Civil Action No. 2:17-cv-00177-CCC-MF
 5   -------------------------------------x
 6   IQVIA, INC. and
     IMS SOFTWARE SERVICES, LTD.,
 7
                              Plaintiffs,
 8
              -against-
 9
     VEEVA SYSTEMS, INC.,
10
                              Defendant.
11
     -------------------------------------x
12
13
14        REMOTE VIDEOTAPED HEARING
15           New York, New York
16           October 29, 2020
17              10:05 a.m.
18
19   BEFORE:  JUDGE DENNIS CAVANAUGH
20
21
22
23   Reported By:
24   ERIC J. FINZ
25
```

```
                                                Page 37
 1                  PROCEEDINGS
 2        part of things they themselves            10:34:14
 3        called purges and cleanups.               10:34:16
 4        Permanently deleted, gone, we can't       10:34:19
 5        use that either.  And James Kahan         10:34:20
 6        was in charge of this; guess what,        10:34:22
 7        his emails from this period, all          10:34:23
 8        gone.                                     10:34:25
 9               So we know there is theft, but     10:34:25
10        we can't prove it and we can't            10:34:27
11        prove it because of spoliation.           10:34:28
12        And now at trial Veeva is going to        10:34:30
13        stand up and tell the jury we can't       10:34:32
14        prove that it did anything wrong.         10:34:34
15        And that's fundamentally unjust.          10:34:36
16        That's what's at stake, your Honor.       10:34:39
17        The integrity of this court and our       10:34:40
18        judicial system.                          10:34:42
19               All right.  Now to turn to         10:34:42
20        what the facts show specifically on       10:34:44
21        the key points.                           10:34:46
22               The first key point is when        10:34:47
23        Veeva's duty to preserve began.           10:34:50
24        Because this is an interesting case       10:34:53
25        where Veeva doesn't deny that it          10:34:54
```